Good morning, Your Honor. It's Robert Friel from the Appellate Department. Your Honor, has the court issued an order asking the parties to look at the jurisdictional issue? No deadline for both of them. Okay. The court issued an order asking the parties to look closer at the jurisdictional issue, as to what the Rahman's had to do with this jurisdictional for Mott's. We have considered that order from April 12th. And what we've noticed is that although Mott's notice of removal is defective and not identifying as part of his citizenship, it appears that Mott's could have been in his notice under 28 U.S.C. section 1653 to cure the defect. And specifically, we were looking at a Mott's corporate disclosure statement, which is in the underlying actions document number two. So it seems, I guess, to me that Mott's could probably have been in his notice of removal to cure the defect. We appreciate that counsel. Thank you. All right. Thank you, Your Honor. Moving on, this case really presents two main issues. One is whether the appellant has Article III standing to seek injunctive relief. And the second is whether the two were aired in non-certifying the liability over the class under Rule 23 and C-4. The first issue presents a familiar scenario. Now we think we're in the Ninth Circuit. The appellant, a California resident, alleged that Mott's food label on Mott's 100% apple juice violated FDA regulations. So he filed a California state action on behalf of the California class, seeking injunctive relief, which is available under California law. The respondent, Mott's, removed the case to federal court, where the district court held that Robin lacked Article III standing for the primary label that he brought, seeking injunctive relief. And it did so precisely because an appellant who pleads that a label is deceptive can't then say, oh, I'll be fooled again. There's the theory that if you know a label is deceptive, you can't be fooled again. So plaintiffs in these labeling cases, in kind of a catch-22 situation, it's led to what Judge Elston has described as a three-way, inaccurately, I believe, as a three-way split in authority. And in this case, with Judge Elston coming out on the side of Mr. Rahman, can't be fooled again. I'm not aware that any other certainty has been able to resolve this issue. I think it's before this court in the first instance, so to speak. And it's a significant issue that should provide guidance to the district courts here. So we have proposed as some suggestions as to how the court might proceed with this difficult issue. So counsel, what if an individual is now aware of the reported mislabeling? What would an injunctive relief accomplish as to that particular plaintiff? As an individual, it would not achieve anything unless it was a particular type of label where could be fooled again because of the idiosyncratic facts of that case. For example, ingredients being changed or something like that. Here, we're talking about apple juice. So that wouldn't apply, but there is a harm here on a class basis. But the individual plaintiff has to establish standing before you go on to the harm, to the class. Isn't that correct? Well, yes, he does. And that's the problem here is unless a more less narrow queue of Article 3 can be taken in consistent with the Supreme Court precedent, it puts the district courts and this court in a difficult position. We can look at class harm as has been done in the Sheffian case. We can look at the fact that class actions are, you know, there's something special and they're different. We have special status statutes for their removal. They get treated different. And in this case, if every time there's a deceptive label, the manufacturer can simply remove and dismiss that allocation. What can happen here is the injunctive relief will go round and round and can never be resolved. And food labeling manufacturers can go on for years, decades with impunity, without having the legality of a deceptive food label. In this case, that we allege violates FDA regulations. It rules upon by a court of law. And just to protect injunctive relief. Damages is a different story. Okay, the injunctive relief, this is the primary relief we saw here. If data filed in federal court or was removed in federal court and sought primarily damages, the injunctive relief issue would not be as important. But to ever resolve whether a label is deceptive, someone needs to be able to walk up to the final line and get a ruling as to whether, in this case, the court's no sugar added. Or how much is a product that doesn't normally contain added sugar violates FDA regulation. I mean, the difficult thing to have is we're skipping past part of the traditional analysis for standing in that there has to be injunctive or redressable relief that's available to the parties seeking standing. How do we get past that? The only way to get past that, we think, is to factor in that this is a class action and the relief that the plaintiff, the appellate here, seeks to redress is a relief on a class basis that has immunofiduciary in the class. He is bound to attempt to bring that relief to the class. But if a court, this court in particular, can't make the leap from Article III standing to, oh, this is a class action and we have absurd results because every case that gets removed could be dismissed, then there needs to be a different solution to preserve the important state interests in having injunctive relief available. And, for example, Judge Donato addressed this in Hillary Clinton's Lehigh case and found that yes, he was bound by Article III. But like this case, we had a California claim, a California class, California claims, California relief being sought. So the solution Judge Donato came up with in that case was remain back to state court. That's where a case like this belongs in the first place. It's removed on the premise that it's jurisdiction here. And if it's not jurisdiction for the main type of relief sought, then an interest of comedy would require, or at least allow, courts to remand such claims to state court. And that's what the appellate here would ask this court to do. The effect that it's unable to find that under the facts of this particular Lehigh case, Article III standing in excess. Here's the one on your right. Can you second the issue? Right here. Second issue is what the district court heard in not certifying a liability of relief class. The first thing to remember about that is that when this class, the motion for class certification was filed in this case, in terms of relief was the centerpiece of that motion. It followed the example of the motor fuel case. It's sort of to show that everything would have the issue of liability to be certified and sever off damages. Although the court ultimately found that there was no Article III standing, Judge Hilston found that all the other elements of liability or class were present. Recently, the motion was denied. The court found that the liability on the class would not advance, would not fully advance the litigation. What's your standard of review for that determination by the district court? I think that would be an abuse of discretion because it's a class certification motion. How did the district court abuse its discretion in making the determination that, based on our assessment of the case, that bifurcation of the liability and damages basis would not fully advance litigation? Why was that an abuse of discretion? It would be an abuse of discretion if Roman had Article III standing. I suspect that's one way. The other way is that we proposed to the court, even though I don't think at the class certification stage we were required to, ideas about how the litigation could be materially advanced. It would be materially advanced because once liability is established, individual class members could go and establish damages if they so wish to do so. But the district court saw it differently. The district court thought you would end up having two separate trials, one on liability and one on damages. What's wrong with her reasoning? What's wrong with her reasoning is that's not something that the plaintiffs ever suggested. It doesn't make sense to have, I think the court said, two class certifications. The idea would be that one trial on liability, establishing that no sugar added is illegal and material and should be unapologized, and then instill procedures from the toolbox of procedures that are available to district courts to deal with the individual damages issues and the individual damages issues are the type that don't need class certification. So we proposed that a claims procedure could be used as a settlement for small-time claims. Also that if there are any larger claims, a magistrate could be used. But we think the judge abused her discretion because at this stage she rejected out of hand that there were procedures that could result in the individual class members getting damages. Those that you're talking about, those are in the context settlements, aren't they? A claims procedure is using a magistrate. It's the kind of situation where some imagination would have to be applied, certainly. And if the parties don't agree, would there have to be a trial on each of the damages? I think at this stage, at the class certification stage, it's simply too early to make a determination as to whether a separate trial would have to occur because the trial that would occur is on liability. And again, the motion was conceived at a point in time where it was fully expected that injunction relief would be available. And so in that context, it would be indisputable that the litigation would move forward. All right. Thank you, counsel. Thank you. Please note that you need to see the man that I'm here with, and back with in this moment of interest, the court. On behalf of Lawson LLP, please let me know if this microphone isn't doing the job. Thank you. Briefly on injunctive standing, this is a blank letter, Article III question. This court's precedent requires that standing for the class representative be established before any further proceedings on certification may proceed at all. And it's unquestionably true that Mr. Rahman could not be trinked if that's the allegation that he makes about the meaning of no sugar added. He asked for apple juice. He bought apple juice. If one remembers that apple juice, there is no sugar added to it. And whether or not that has meaning to him, that is different than it is to others, he will himself never again know what is meant by that label on Lawson's 100%. Apple juice. In response to opposing counsel's observation that if we take that route, an offender can just continue to mislabel, and there would never be a meaningful review whether or not that mislabeling should be ceased. Well, the answer, I think, is multifaceted, and that only amplifies my point. And that is, although it may be true that an individual like Mr. Rahman lacks Article III standing to be the one to pursue injunctive relief, there are opportunities for a teen-injured individual to pursue damages, perhaps in a class if they could show a way to do that. But the Attorney General of California, district attorneys in California, city attorneys in California, the Federal Trade Commission, the Department of Justice, there is no shortage of people who can vindicate this injustice. It needs to be vindicated. What we cannot do, though, is to say that because, perhaps, the Attorney General of California chooses not to pursue something in best resources, saying a label that says 100% apple juice, no sugar added, and he's 100% apple juice and no sugar added, that's the way we want to invest our resources. That does not expand Article III. Marbury v. Madison was a case with much more serious injuries, and the Supreme Court said there's no Article III jurisdiction for us to vindicate. So I never thought I would be in an argument talking about Marbury v. Madison, but that's really the level to which this case would require the courts to recourse to if standing could be established for injustice on the part of someone who has zero chance of ever being misled again. We think that the other question, this Court asked the parties to reconfirm our position, frankly, on standing is that the Court has eventually had it before it, but this permission to grant was limited to certification. Rahma asked. It is a jurisdictional issue. We always have jurisdiction to determine our jurisdiction. It's true, but not in order to go back and grant a new remedy. So even if you would, in theory, have jurisdiction, which, of course, is impossible given the Article III limitations, it nonetheless could not be used to go back in and grant relief to the District Court in summary judgment issue Rahma asked for permission from this Court to address the Court did not grant that permission. Either way, the bottom line should be the same. There cannot possibly be standing on behalf of Rahma to represent a class to pursue an injunction. The 23C4 question is perhaps somewhat more plausible. That, however, turns on the sound discretion of a district judge who has lived with this case and will continue to manage this case, whether it proceeds to class or an individual capacity. And Judge Elston, who is no opponent of class treatments, is not averse to proceeding in the class form, went through the analysis and gave Rahma every benefit of every doubt in ways that we think perhaps were wrong in some respects. In the OS, after giving him the benefit of every doubt, without the benefit of the Supreme Court decision in Spokane, which made very clear that the circuit's precedent, which allowed for individual injury simply because of a regulatory violation, that's the FCRA here, we have a different statutory program, but even without those findings that we think she should have made, even without Spokane, she nonetheless got to the end of the line and said, after concluding the 23As and then after concluding the 23B3, could it be met? Nonetheless, the gain isn't worth the gain, because resolving this very slim issue about whether a federal regulation, which there is no separate cause of action, incidentally, was violated or not, would leave basically the same morass that we have before deciding it. And if the position that Rahma takes is correct, that simply identifying some common legal issue would be enough to convert a district court's denial of certification into an abuse of discretion, we are entering a new day about class certification. Did she? Can she essentially, or did she essentially look through the merits of the claim? No, she didn't, Your Honor. I think that if she had, it would have been an even quicker case than it was. But to the contrary, she gave him opportunities to show how he could find in common a resolution of damages, how to predict the reliability of damages, assuming liability was there. She allowed some little briefing in saying, look, I'm serious. You can show me a way that we would have some plan. It doesn't have to necessarily be in certified damages, but some plan that would link the theory of liability to that assuming it's really correctly assumed that it was valid at that stage for certification purposes. And the response was, no joke, look at page 39 of the excerpt of the record. Lots of courts within this district have rejected damages models. Therefore, we're not going to try to provide you with one. That cannot be the basis, that cannot be the predicate for certification. It's not something that other people have actually tried to show what the plan for establishing damages would be that failed. It means that our safest bet is to not even try at all. So, in other words, what you're saying is that she said, I'm not going to certify a liability class because you can't show me how that is going to further in a later determination of damages. It is in part, and I want to make one really important clarification, that is by liability class, what she meant was the single question of, does the federal regulation, FDA's regulation, is that abuse violated by this label? And there's a lot more to it than that. And if you look at footnote 4, page 15 of the record, which is her opinion of a live Order 9 certification, she has produced really important and meaningful, almost prescient, what later happened in Spokane. And as she said, Rahman seems to assume that if liability, again liability meaning an establishment violation of this regulation, if liability is established, if he seems to assume that damage is automatically followed, that is not the case. Now, I say that that's prescient to Spokio because Spokio said it has to be claught free with respect to every individual plaintiff. And we know that simply having your release information about you that is generated by Spokio, people will search the internet, isn't necessarily and satisfies Article 3. What we have in this case is a potential class of people who may or may not have bought whether it was an apple juice when they had the particular label or didn't have a particular label. And who may or may not have bought the apple juice because of that label. The point is the district judge is already recognizing, even before Spokio made this elusive and clear, that there are significant individuated issues, not just about calculating damage. Our argument is not that an individuated damages calculation following liability automatically completes certification. The bank pay cases, some of the overtime cases, prove that of course you can't send in everybody in the class with the same check for the same dollar amount. This is far more complex than that. We have questions about whether or not members of this proposed class would even have standing under Spokio, let alone whether they would have injury, let alone whether there would be causation, let alone whether or not we would be able to ascertain what possible amount of And there's no evidence in the record at all that suggests there's any variance in price based upon whether or not the no sugar added label is there. In fact, the elusive evidence is that months charged to the retailers, the exact same price, whether or not the label was there. A year went by, they didn't even know that the label was there. The extent of the merits was that people lurking in the background. They changed the label and it shouldn't be there today. And they strongly dispute the idea that it isn't invalid. In fact, it certainly isn't justified class treatment of this lender issue. Then once the curtain's lifted, we've gone to the trouble of certifying a B3 class. We've tried to figure out who in the world could be in this class. We've tried to get notice. We've gone through the lockdown process. Judge Wilson's the new manager of this nightmare of a class. And we get to the end of it, and she says, we're no better off than you were when we started. Yes, there is discretion for district judges when it comes to certifying or denying the certification of a class. That discretion has to extend to a situation under Rule C4. Rule 23 is a discretion-laden rule. Rule 23B is a discretion-heavy part of a discretion-laden rule, because it's the incursome to, as the Supreme Court has described, multiple opinions. You try to go beyond where class actions ever begin. And Rule 23C4 is an exception to an exception to an exception, because it's own language. The district court may certify when appropriate. If a judge like Judge Wilson cannot stop and decide that this is not appropriate, I don't know when a judge could. What does the label now say? The label says no sugar added. As far as I know, your order is the exact same label that you can find in the record, page 211. No sugar added. Did I say sugar added? I want to make sure you said no sugar added. No sugar added, yes. This is, you know, Mott's 100% apple juice is apple juice from concentrated water with vitamin C. There is no sugar added. It is naturally sweet and delicious, as Raman himself said in the record, in his deposition, over and over and over again. He loved it. He drank it and didn't buy it because that label didn't notice necessarily when the label appeared or disappeared. He said he would buy it again so long as the label were taken off. Again, emphasizing, however, that he in no way is being misled by it. What's happening in this case, if there is any injury even to Raman, it's very clear how he would individually be able to establish damages, much less do so on behalf of a class or establish a path for a class, is what's going on inside his head. And what I wanted to mention is maybe the last point, the way that the merits might influence this case, is that the district judge explained on page 39 of the record in her summary judgment opinion that no reasonable disorder would be misled. And so we are faced with a situation in which we attempt to have a class process on behalf of a class. If any of our reasonable consumers would not have been injured in the way that Raman claims that he was injured. So unless the court has additional questions, your Honor. I think you should stick around for the next case. Well, I intend to and look forward to if there are real questions. For me, however. Thank you, Justice. Your Honor. Excuse me. I'll end it for a moment. Thank you, Mr. Tyler. Thank you. I'm going to have about one minute, Your Honor. Two points. One thing that Mons' presentation demonstrates is that this label, except for one year when the accident, we've got to put it on for years, likely decades. It takes the position that private enforcement is not necessary. That this roundabout going from state court to federal court to dismissal, state court, federal court, dismissal, should be the rule of the day here in these types of cases. It should be left up to attorney generals and the FDA to do the enforcement. If that's not in the law in California, it should be there must be some means of private enforcement. And whether that's looking at Article III differently or Raman in cases, one or the other. As long as the issues can be reached somehow, the justice would have been served. The other thing is a small point on the supplemental briefing. It's worth pointing out that Judge Hulston asked us two separate questions. One was, she asked why the plaintiffs did not elect to present expert testimony on the damages issue. And then as a separate question, how the Lady Fly building holy flask would advance the litigation. I've already discussed the latter. But I would ask the court to perhaps go back to EUR around pages 38 to do this, to be assured that these are two different issues. They should not be conflated. And to suggest that there was anything other than a decision to proceed the way we did based on the availability of the liability of the flask. Thank you, counsel. Thank you to both counsel. The case was fine. It is submitted for decision by the court. The next case on the calendar for argument is Major versus Ocean Spray. Thank you.
judges: Schroeder, Rawlinson, Stafford